### THE STATE v. RAINSBARGER.

1. **Criminal Evidence**: TESTIMONY OF WIFE OF ONE JOINTLY INDICTED.
   The wife of one indicted for the same offense as that for which defend-
   ant was alone on trial, was a competent witness against defendant,
   where no communication between her and her husband was sought to
   be elicited.   Section 3641 of the Code does not exclude her testimony
   in such a case.

2. ———: BAD CHARACTER OF DEFENDANT: OTHER CRIMES.   Evidence
   which has no other effect than to show that defendant has been guilty
   of other crimes than that charged in the indictment, is not admissible
   on the part of the state; neither is evidence of defendant's bad character,
   where he has not himself placed his character in is-ue.

3. ———: OPINIONS OF ORDINARY WITNESSES.   The opinions of ordinary
   witnesses, derived from observation, are admissible in evidence, where,
   from the nature of the subject under investigation, no better evidence can
   be obtained, or the facts cannot otherwise be presented to the tribunal.
   Accordingly, *held* that it was competent for ordinary witnesses to give
   an opinion that the wheel and shaft of a buggy in which decedent had
   been riding were broken purposely by force applied thereto in a certain
   manner, the witnesses having also described the appearance of the
   wheel and shaft, and the general condition of the buggy, and of the
   ground in the vicinity.

4. **Murder**: INSTRUCTION: INFERENCE OF MALICE FROM USE OF DEADLY
   WEAPON.   On a trial for murder, an instruction that malice would be
   implied from the unlawful and intentional use of a dangerous or deadly
   weapon in such manner as that the natural or necessary consequence of
   the act would be to destroy the life of another, while not correct as
   applied to all cases of homicide, *held* not to have been erroneous where
   there was no evidence that the killing was accidental or upon prov-
   ocation, and the presumption therefore arose that it was voluntary, and
   with malice aforethought.   (Compare *State v. Gillick*, 7 Iowa, 311.)

*Appeal from Marshall District Court.*

TUESDAY, MARCH 1, 1887.

THE defendant was convicted of the murder of one Enoch Johnson, and sentenced to imprisonment in the penitentiary for life, and from that judgment he appeals.

*C. E. Allbrook* and *Brown & Carney*, for defendant.

*A. J. Baker*, *Attorney-general*, for the State.

REED, J.—On the morning of the nineteenth of November, 1884, the dead body of Enoch Johnson was found on a public road near the village of Gifford, in Hardin county. The circumstances proven on the trial sustain the finding of the jury that his death was caused by injuries which had been inflicted on his person by another, and that the killing was felonious. There was also evidence which tended to prove that the crime was committed by this defendant and his brother, Frank Rainsbarger. But whether the evidence was sufficient to sustain the verdict of guilty against him, we will not determine on this appeal.

I. The state was permitted to examine the wife of Frank Rainsbarger as a witness on the trial, and her testimony

1. CRIMINAL evidence: testimony of wife of one jointly indicted.

tended to prove facts material to the case. An indictment was pending against her husband, in which he was also accused of the murder of Johnson, although he was not on trial at the time. The objection urged against the admission of her testimony was that, as it necessarily tended to prove that her husband was guilty of the crime for which defendant was being tried, she was not a competent witness. We deem it unnecessary to enter upon any discussion as to what the rule in such cases would be in the absence of statutory regulation; for the whole subject in this state is governed by statute. Section 3636 of the Code provides that "every human being of sufficient capacity to understand the obligation of an oath is a competent witness in all cases, both civil and

criminal, except as herein otherwise declared." Sections 3641 and 3642 are as follows: "Neither the husband nor wife shall in any case be a witness against the other, except in a criminal prosecution for a crime committed one against the other, or in a civil action or proceeding one against the other.   *   *   *"   "Neither husband nor wife can be examined in any case as to any communication made by the one to the other while married, nor shall they, after the marriage relation ceases, be permitted to reveal in testimony any such communication made while the marriage subsisted." These are the only provisions relating to the subject.

Under section 3636, any person of sufficient capacity to understand the obligations of an oath is a competent witness in any case, unless he is included in some of the exceptions created by other provisions. The exception created by section 3641, with reference to witnesses in criminal cases, is that neither the husband nor wife can be examined as a witness against the other, except in a prosecution for a crime committed by the one against the other; and that created by section 3642 makes the husband and wife incompetent witnesses to prove communications made by one to the other during the existence of the marriage relation. Very clearly, we think, the witness is not included in either of these exceptions. Her husband was not on trial, and her testimony was not against him, and she was not examined as to any communication made by him to her.

II.   The witness Mrs. Rainsbarger was asked by the district attorney whether she had heard a conversation between the defendant and the deceased a short time before the death of the latter, in reference to what defendant was to do for deceased; and she answered that deceased asked defendant and her husband what they were going to do about helping him to get money and clothes to get ready for a trial which he was expecting, and that defendant answered that "he had nothing,—only his threshing-machine and team to help him, and they were

2. ——: bad character of defendant: other crimes.

mortgaged; and if he helped him he would have to go out and steal it; that he had stolen to keep the children from cry-ing, and, if they were going to steal, they might just as well go to work and steal." The questions which elicited these answers were objected to by defendant's counsel. They also moved to exclude the answers after they were given, but the court overruled the objection and the motion. These rulings were erroneous. The testimony objected to did not tend to prove any fact material to the case. It was elicited as part of the evidence of the state in chief. It tended only to prove that defendant had been guilty of other crimes than the one charged in the indictment on which he was being tried, or that he was a reckless bad man, who was willing and ready to engage in any criminal enterprise. The rule that the state is not permitted to introduce evidence of the commis-sion by the accused of crimes entirely distinct from that for which he is being tried, for the purpose of proving him guilty of that crime, and that it cannot show his bad char-acter until he has placed his character in issue, has been so long recognized and is so well settled that there can be no necessity now for citing authorities in its support.

III. When Johnson was killed, he was traveling on the highway in a buggy drawn by a single horse. This buggy was found standing about eighty rods from the body, with one of the forward wheels and one of the shafts broken. The evidence tended to prove that the homicide was committed at a point about sixty-four rods from where the buggy was found, and that the body was carried to the point where the buggy was left, on the horse which Johnson had driven, and that it had been dragged from there to the place where it was found. The state sought to establish that the buggy had been pur-posely broken by the application of some force to the wheel and shaft. A number of witnesses who examined it as it stood in the highway the morning after the killing were asked their opinion as to the manner in which the wheel and

shaft had been broken, and they gave it as their opinion that a force had been applied at the top of the wheel, by which the upper part was forced outward, and the lower part in the opposite direction, and that the spokes were broken in that manner; also that the shaft appeared to have been broken by being pulled outward by a force applied at the forward end. A witness was also permitted to testify that in his opinion the buggy was strong enough to carry two men of ordinary size without breaking. The appearance of the wheel and shaft, and the general condition of the buggy and of the ground in the vicinity, were described by the witnesses. It is insisted that the jurors, having these descriptions before them, were quite as competent to form a correct opinion of the capacity of the buggy, and as to the manner in which the breaking had been accomplished, as were the witnesses, and that the opinions of the witnesses were incompetent. It is true, as a general rule, that ordinary witnesses are not permitted to state their opinions upon questions that are to be determined by the jury, but it is the province of the jurors to draw such deductions and conclusions from the facts proven as appear to them to be reasonable. This rule, however, is not universal.

Mr. Lawson, in his work on Expert and Opinion Evidence, lays down the following as the rule on the subject established by the authorities. "The opinions of ordinary witnesses, derived from observation, are admissible in evidence, where, from the nature of the subject under investigation, no better evidence can be obtained, or the facts cannot otherwise be presented to the tribunal." (Rule 63.) See, also, the cases cited in the note.

The present case falls within this rule. Perhaps one of the most important matters to be considered in determining the manner in which the breaking of the wheel and shaft was accomplished, was the strength of the materials of which they were made, and it would be difficult, or impossible, by any mere verbal description, to give the jurors any definite

or certain information on that subject. The witnesses had personally inspected them, and had had an opportunity to see and consider every circumstance which should be considered in forming an opinion; and the opinions given by them were formed from their observation of the facts. It was impossible to place all the material facts before the jury. The witnesses were in a position to form a correct opinion upon the subject, and the jurors could not be placed in that position.

IV. In an instruction defining malice as an element of murder, the jury were told, in effect, that malice would be implied from the unlawful and intentional use of a dangerous or deadly weapon in such manner as that the natural or necessary consequence of the act would be to destroy the life of another.

*4. MURDER: instruction: inference of malice from use of deadly weapon.*

Cases of homicide might arise in which an instruction in the language of the one in question would be misleading and erroneous. The killing of another may be accomplished by the unlawful and intentional use of a deadly weapon, and yet the one committing the act may be guilty of no higher crime than manslaughter. This might be so in any case where the killing was voluntary, but committed without deliberation, and in the heat of passion, induced by great provocation. In such cases, although the homicide was voluntary, and was committed by the intentional use of a deadly weapon, malice is not imputed to the act. But in the present case there was no evidence that the killing was accidental or upon provocation. The presumption, therefore, is that it was voluntary, and with malice aforethought. *State v. Gillick*, 7 Iowa, 311. As applicable to the evidence in the case, the instruction is correct.

Exception is taken to other instructions given by the court, and to other rulings on the admission and exclusion of testimony. We deem it unnecessary to specially notice the rulings complained of. They appear to us to be correct. For the error pointed out in the second paragraph of this opinion, the judgment must be                    REVERSED.