ALFRED NOWABBI v. STATE.

No. A-5564.   Opinion Filed Jan. 25, 1927.
(252 Pac. 442.)

See, also, 29 Okla. Cr. 355, 233 P. 784.

Phillips & Phillips and Hal Welch, for plaintiff in error.

George F. Short, Atty. Gen., and Houston B. Teehee, Asst.. Atty. Gen., for the State.

DOYLE, P. J.   Appellant, Alfred Nowabbi, was convicted of manslaughter in the first degree on an information charging him with the murder of Nellie Nowabbi, his wife. The jury failed to agree upon the punishment; motion for new trial was duly filed, and overruled. The court sentenced him to confinement in the penitentiary for a term of 30 years.   To reverse the judgment he appeals.

The following brief statment of the facts leading up to and immediately surrounding the killing of Nellie Nowabbi will be sufficient to make clear the contentions made:

On the day of the tragedy, March 10. 1924, appellant was living three or four miles west of Hugo.   His family consisted of his wife and six children.   Three of his children were living with his mother in Hugo.   One Vicey Sanders and her child were staying at appellant's home, she having about three months prior thereto separated from her husband.   On the morning of the day of the tragedy, appellant went to Hugo and returned home about six o'clock in the evening.   With him were Joshua and

Ben Roberts, brothers of Mrs. Sanders. On his way home appellant stopped at the home of Liza Logan and borrowed a pistol and some cartridges. Upon their arrival at his home, the Roberts boys took charge of the team at the barn, appellant going on to the house, which consisted of four rooms, one being used as a sitting room, two bedrooms, and one used as a kitchen and dining room. After putting up the team, the Roberts boys came into the house, and upon entering the sitting room appellant came in from one of the bedrooms with a pistol in his hand and went on into the kitchen where his wife and Mrs. Sanders were preparing the evening meal. Upon his going into the kitchen, Mrs. Sanders came out, leaving only decedent and appellant therein. A few minutes later a shot was fired. Mrs. Sanders started to go into the kitchen, and met appellant coming out with a pistol in his hand. The Roberts boys ran out on the porch followed by Mrs. Sanders, their sister. Appellant came out and directed Joshua Roberts to go into the kitchen and put out the fire on the clothes of his wife, resulting from the shot. The bullet having entered the body directly under the left arm, ranged directly through the body, coming out directly under the right arm. Death was almost instantaneous. Appellant directed the boys to hitch up his team and taking the three children, accompanied by Mrs. Sanders, drove to his mother's place in Hugo, and there reported the death of his wife, stating that it was accidental. Appellant with his mother and sister and Mrs. Sanders returned to his home, arriving there about 8 o'clock that evening. The sheriff and one or two deputies arrived at appellant's home about 9 o'clock and made an investigation. They found decedent's body in the kitchen on a pallet with the pistol by her side. The sheriff's investigation disclosed that the body was cold and stiff, rigor mortis having set in. The pistol was warm, indicating that it had just been placed by the side of the body.

Appellant, his mother and sister, Mrs. Sanders, and her two brothers, were all in the sitting room. Upon being questioned none of those present offered to tell the sheriff why the pistol was warm or why it was placed by the side of the body. Upon inquiring as to the manner of the homicide, appellant told the sheriff that his wife got mad and was jealous and killed herself. He was then taken into custody, and on their way to jail upon further inquiry of the sheriff, appellant stated that his wife was jealous of him and a Choctaw girl by the name of Liza Logan, with whom he had been to picture shows on several occasions. He also stated that he had been drinking Jamaica ginger that afternoon. Upon applying for bail, appellant changed his story of the homicide and said that he accidentally shot his wife. There was some evidence of quarrels between appellant and his wife after Mrs. Sanders had moved to appellant's home. Shortly after Jim Skelton was doing some work for appellant. On cross-examination, appellant was asked if he did not have a conversation with Skelton to the effect that his wife had sold all her property and that Mrs. Sanders had property, and that he (appellant) wanted to marry her, but that his wife was in the way. He denied this. However, he admitted making the statement as to the manner of the homicide to the sheriff, but denied the truthfulness thereof.

In rebuttal the state called Jim Skelton, who testified to a conversation had with appellant wherein he expressed his desire to marry Mrs. Sanders, and stating that his wife was in the way.

Mary Nowabbi, appellant's mother, testified that her son told her, upon arriving at her home, that the homicide was an accidental killing, and that she advised him that pending consultation with an attorney to say that his wife had committed suicide.

Appellant, attempting to explain the shooting, stated

that he had borrowed a pistol that day from Liza Logan to take with him for protection purposes the next day when he intended to look after some land owned by his mother in Pushmataha county, located in a wild and sparcely settled community; that he took the pistol into the kitchen for the purpose of cleaning it, and after his wife told him where the coal oil can was, he put the can on the table, and while attempting to eject the loads from the pistol it accidentally fired and killed his wife.

One of the grounds of the motion for new trial and assigned as error is that the court permitted the jury to separate during the course of the trial, and before the final submission of the case. The record shows that after several witnesses had testified the court announced a recess and duly admonished the jury. Thereupon counsel for defendant requested the court to keep the jury together. The request was denied. At two other adjournments the same request was made. It is now urged that, because of the fact that the jury by virtue of their separation had opportunity to mingle with the public generally during the trial, they were exposed to improper influences. It is the theory of counsel for defendant in this connection that it was not incumbent upon him to show that prejudice resulted from the separation and in support thereof cites the case of Evans v. State, 29 Okla. Cr. 9, 221 P. 794. In that case it is said:

"It is charged, and the proof offered in support of the motion for a new trial shows, that five brothers and a sister of the deceased and other relatives and friends mingled with the jury at every recess and adjournment of the trial, and this proof was undisputed by the state."

Under the provisions of our Criminal Code, the jurors chosen to try the cause may at any time before the submission of the cause to the jury, in the discretion of the court, be permitted to separate or be kept in charge of proper officers. Section 2716, C. S. 1921. At each ad-

journment, whether permitted to separate or kept in charge of officers, the jury must be properly admonished by the court until a final submission of the cause. Section 2717.

In the case of Nowabbi v. State, 31 Okla. Cr. 158, 237 P. 868, it is held:

"Where a reasonable request is made that the jury in a capital case be held together in charge of a bailiff before the case is finally submitted to them, and such request is denied, in the absence of any showing of prejudice or misconduct by any member of the jury, or any person in the presence or hearing of the jury, the error of the court in denying the request to hold the jury together is not necessarily reversible."

And the rule is well settled in this state that where a separation is permitted prior to the final submission of the case, the burden is on the defendant to show that prejudice resulted. Armstrong v. State, 2 Okla. Cr. 567, 103 P. 658, 24 L. R. A. (N. S.) 776.

In the case of Horn v. State, 13 Okla. Cr. 354, 164 P. 683, this court said:

"There is no doubt but that the trial court should exercise sound judicial discretion in a capital case by granting the request of either party to place the jury in charge of a sworn officer during the progress of the trial. This must be done after the case is submitted to the jury. The presumption of law is that the courts and the juries perform their duty in accordance with the oaths they have taken, and that the presumption is only overcome by proof to the contrary. It is incumbent upon the defendant who complains of the separation of the jury, before the case is finally submitted to affirmatively establish that by reason of the separation he was denied a fair and impartial trial; that his substantial rights were prejudiced thereby."

Complaint is also made that during a recess of the court the county attorney, in the view, presence, and hearing of two members of the jury, picked up the pistol introduced in evidence, and said in substance that one of the

attorneys for the defense had shown him how the accident had occurred; that there was nothing to the defendant's defense; that it would not hold water; that he could not be fooled that way; and that the jury would know better too. The county attorney made affidavit that during a recess of the court during said trial he took the pistol with which it was admitted the shooting was done demonstrating to the sheriff and some others how shells were ejected from said pistol, when some one called his attention to the fact that two jurors were present in the courtroom, and he immediately desisted; that during his argument to the jury he went through the same demonstration as he had in the courtroom, when his attention was called to the presence of the two jurors, and even went further with it. On the record before us we do not think that the county attorney's conduct was prejudicial to the substantial rights of the defendant. It follows from what has been said that motion for new trial was properly overruled.

Complaint is made that the court erred in permitting the state to offer evidence in rebuttal as to the conversation had between the witness Jim Skelton and the defendant. The defendant as a witness denied the alleged conversation. In rebuttal the state was permitted to call the witness Jim Skelton to testify that the defendant, in substance, had told witness that he wanted to marry Vicey Sanders, but that his wife was in the way. His objection is based on the theory that this testimony was in effect evidence in chief and not in rebuttal, and therefore was inadmissible and should have been excluded for the reason that the name of the witness had not been indorsed on the information. In our opinion it was clearly rebuttal in character, and for this reason it was not necessary that the name of the witness should be indorsed upon the information. Stanley v. State, 28 Okla. Cr. 135, 229 P. 657.

The record shows that the defendant reserved ex-

ceptions to the instructions submitting the issue of manslaughter in the first degree. It is contended that under the evidence the defendant should either have been convicted of murder or acquitted, and that no instructions of manslaughter in the first degree should have been given.

In Irby v. State, 18 Okla. Cr. 671, 197 P. 526, this court held that—

"In a prosecution for murder, when the court submits the issue, and the jury finds the defendant guilty of manslaughter in the first degree, in a case where the law and the facts make the crime murder, it is an error in the defendant's favor, of which he has no cause to complain."

A number of exceptions are reserved to rulings of the court in refusing instructions. We find that the instructions given, taken as a whole, fully presented the law of the case; that the instructions requested were properly refused.

Complaint is also made that the trial court improperly cross-examined the defendant's witness Vicey Sanders. An examination of the record discloses that there is no merit in this contention.

From a careful consideration of all the evidence, we are convinced that the jury would have been fully justified in convicting the defendant of murder, and he has cause to congratulate himself that the jury found him guilty of manslaughter in the first degree only.

The legislative department of this state, by the enactment of section 2822, C. S. 1921, has made it clear that the appellate courts of this state are not at liberty to set aside a judgment unless, "after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right."

In Harris v. State, 14 Okla. Cr. 489, 173 P. 958, Judge Matson, in writing the opinion of the court, says:

"It is not intended that the appellate courts should hunt through the numerous volumes of law books in the State Law Library to find technical reasons for reversing a conviction or to excuse the rulings and conduct of the trial judge in instances of this kind. The necessity of that has been done away with by the foregoing enactment of the Legislature, and it is the solemn intention of this court to respect that enactment. The trend of modern thought is to the effect that where the guilt of those charged with crime is established beyond the peradventure of a doubt, such as in this case, the criminal shall not escape his just punishment just because certain matters occurred and rulings were made by the trial judge during the progress of the trial that have heretofore been held to be technically erroneous.

"It is not error alone that reverses judgments of conviction of crime in this state, but error plus injury, and the burden is upon the plaintiff in error to establish to this court the fact that he was prejudiced in his substantial rights by the commission of error."

The proof tends to show a most atrocious crime, and if there is any miscarriage of justice in this case, it was because the jury failed to return a verdict finding the defendant guilty of murder.

A careful examination of the record confirms our conclusion that the defendant was accorded a fair trial.

The judgment appealed from is accordingly affirmed.

EDWARDS and DAVENPORT, JJ., concur.