## J. ARTHUR KELTNER v. STATE.

No. A-7949.  Sept. 5, 1931.
Rehearing Withdrawn Oct. 1, 1931.
(3 Pac. [2d] 451.)

Sigler & Jackson, for plaintiff in error.

J. Berry King, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

CHAPPELL, J. Plaintiff in error, hereinafter called defendant, was convicted in the district court of Johnston county of the crime of manslaughter in the first degree, and his punishment fixed by the jury at imprisonment in the state penitentiary for a period of 50 years.

The evidence of the state, supported by the dying dec-

laration of the deceased, was that the killing was murder. The evidence of the defendant was that the killing was done in his self-defense. The issues thus raised were submitted to the jury and settled by them in favor of the state by finding the defendant guilty of manslaughter in the first degree.

It is first contended by defendant that the trial court erred in excluding from the consideration of the jury evidence offered by the defendant of prior acts of violence on the part of the deceased.

This assignment specifically relates to the offer of proof made while the witness James (Buck) Ayers, son of the codefendant Robert Ayers, was on the witness stand in behalf of this defendant. The relative portion of this is as follows:

"Q. Did you see Ira Sanson there? A. Yes, sir. Q. What was Ira Sanson doing? Objection by Mr. Brown: Incompetent, irrelevant and immaterial, and states that if he did talk to anybody else it would not be competent in this trial. By the Court: Sustained. Exception. Mr. Jackson: The defendant offers to show by this witness and T. A. Swindle that when the witness left the store T. A. Swindle was walking behind him and they approached near where Ed. Jackson lived and Ira Sanson came out of the house and threw a gun on him and the witness said 'This is T. A. Swindle' and Sanson put up the gun and said 'He thought it was Ed. Jackson.' "

No offer of proof of other acts of violence on the part of the deceased was made. T. A. Swindle, the person referred to in the offer above quoted, was never introduced as a witness in behalf of defendant.

In the first place the offer was not proof of any specific act of violence on the part of the deceased. Furthermore, the testimony of the defendant precludes any in-

jury to him from the refusal of the trial court to permit the witness to testify as set out in the offer.

Defendant testified in chief specifically as to these matters.

The trial court therefore committed no error prejudicial to the defendant in refusing to allow the witness to testify as offered by defendant's counsel.

Defendant contends that the trial court erred in permitting the state to cross-examine the witness Robert Ayers on immaterial matter, and in admitting statements of Ayers made to the officers out of the presence of defendant. The defendant was asked on cross-examination:

"Q. Didn't he (the sheriff) tell you that one of the things was that pointed to your guilt was that this man was killed with your gun? By Mr. Sigler: Objected to, incompetent, irrelevant and immaterial. By the Court: Overruled. Exception. A. No, sir. Q. And didn't you tell him in response to that, 'Couldn't he have gotten it out of my car without my knowing anything about it?' A. No, sir. Q. Did you tell the sheriff whose gun that was? A. No, sir. Q. And didn't you tell Mr. Hunt, the sheriff, on this same trip from Atoka to Durant, that if your wife had agreed to tell Ira what you wanted her to about staying away, that there would not have been any trouble at the bridge? A. I don't think so, but I might have, if she had talked to him I wouldn't have talked to him and probably wouldn't have had a conversation with him."

The impeachment of the witness is shown by the testimony of Fred Hunt, the sheriff of Johnston county:

"Q. Did you ever accompany Mr. Robert Ayers from Atoka to Durant? A. I did. Q. Anybody with you? A. The county attorney was. Q. Did you have a conversation with Mr. Robert Ayers on that occasion? A. I

did.   Q.   And in response to his request to tell him some of the things that caused you to have him arrested, I will ask you if you didn't tell him that one of the things that caused his arrest was that this boy was killed with his gun, to which he replied that 'Couldn't Mr. Keltner have gotten this gun without my knowing anything about it'?   By Mr. Sigler:   Objected to for the same reason.   By the Court:   Overruled.   Exception.   A.   In substance, yes.   I didn't use the word Keltner but he acknowledged it was his gun."

In Gibbons v. Territory, 5 Okla. Cr. 212, 115 Pac. 129, 130, this court said:

"When a witness, though on cross-examination, gives adverse testimony to the person cross-examining, showing his interest or bias in the case, or lack of it, such person is not bound to accept the statements of such witness as conclusive, but is entitled to offer proof contradicting such witness and tending to establish the existence of facts to the contrary."

In the following cases this court has held that impeachment to show bias and interest of the witness is proper:   Felice v. State, 18 Okla. Cr. 313, 194 Pac. 251; Beason v. State, 18 Okla. Cr. 388, 195 Pac. 792; Stanfield v. State, 30 Okla. Cr. 82, 235 Pac. 256.

The evidence complained of was proper for impeachment as tending to show bias and prejudice of the witness as a result of the prosecution.

Defendant next contends that the trial court erred in permitting the state to interrogate the witness Robert Ayers on cross-examination relative to immaterial matters pertaining to alleged violation of the liquor laws by the said Robert Ayers.

Robert Ayers was jointly charged with the defendant in the commission of this crime, but was not then

upon trial. He was offered as a witness by the defendant. The substance of the evidence complained of was that deceased had worked for witness 12 or 15 years; that during part of that time he had been making whisky for witness; that deceased had served one federal sentence in jail for making and selling whisky; that when deceased was caught by the federal authorities he was making whisky for the witness; that the still deceased was operating belonged to the witness, and that deceased had a 30-day jail sentence hanging over him at the time of the commission of the homicide.

This cross-examination was proper, in that it might tend to show motive on the part of the codefendant, Ayers. While proof of motive is not indispensable, it is always considered proper. McClendon v. State, 19 Okla. Cr. 382, 200 Pac. 464.

It is next contended that the trial court erred in compelling the wife of the codefendant Ayers to testify against this defendant on a separate trial, over his objection.

Section 2699, C. O. S. 1921, has reference only to husbands and wives as witnesses for or against each other. Since Mrs. Ayers was not the wife of this defendant, this statute has no application to the situation here presented. The only case cited by defendant is Howard v. State, 94 Ga. 587, 20 S. E. 426, in which the Supreme Court of Georgia held that the husband or wife would not be compelled to testify against a joint defendant, even if there was a severance on the trial, where the offense charged required the joint act of the persons indicted in order for either party to be guilty. That is not the situation in this case, because either defendant could have been guilty

of this murder, irrespective of the guilt of the other defendant.

In State v. Rainsbarger, 71 Iowa, 746, 31 N. W. 865, the Supreme Court of Iowa had this question under consideration and there said:

" "A woman against whose husband an indictment is pending is a competent witness for the state on the trial of an indictment of another person for the same offense; and Code Iowa, §§ 3641, 3642, providing that neither a husband nor wife shall in any case be a witness against the other, does not apply."

In Rivers v. State, 118 Ga. 42, 44 S. E. 859, the Supreme Court of that state said:

"Where a married woman is jointly indicted with another, and there is a joint trial, the husband is incompetent as a witness for or against her. Where there has been a severance, and the offense does not require the joint act of the persons indicated, he is not incompetent to testify on a separate trial of the other defendant."

To the same effect is Munyon v. State, 62 N. J. Law, 1, 42 A. 577.

Under our statute and the authorities above cited, Mrs. Ayers was a competent witness in the trial of the defendant.

Defendant next contends that the trial court erred in giving instruction No. 8, on manslaughter in the first degree.

In this connection counsel for defendant contends that the defendant is either guilty of murder or nothing, and that the instruction on manslaughter in the first degree is unauthorized by the evidence.

In Harper v. State, 20 Okla. Cr. 43, 200 Pac. 879, this court said:

"Where the defendant is charged with murder, an instruction defining manslaughter in the first degree is proper where the evidence on both sides is conflicting concerning their motives, their aggressiveness, and elements of self-defense."

In Lazenby v. State, 18 Okla. Cr. 83, 192 Pac. 1103, this court said:

"In a prosecution for murder when the court submits the issue, and the jury finds the defendant guilty of manslaughter in the first degree, in a case where the law and the facts make the crime murder, it is an error in the defendant's favor, of which he has no cause to complain." Inman v. State, 22 Okla. Cr. 161, 210 Pac. 742; Willis v. State, 25 Okla. Cr. 259, 220 Pac. 72; Nowabbi v. State, 36 Okla. Cr. 97, 252 Pac. 442.

The error, if any, in submitting the question of manslaughter in the first degree, being in favor of the defendant, he cannot be heard to complain.

Defendant next contends that the trial court erred in refusing to reopen the case on the part of the defendant after he had announced the closing thereof, in order to permit the defendant to introduce in evidence the clothing worn by the deceased at the time of the commission of the homicide.

This court has repeatedly held that the matter of permitting a case to be reopened after the same has been closed, for the purpose of permitting a party to introduce additional evidence, is a matter discretionary with the trial judge.

Defendant next complains that the court erred in reprimanding his counsel in the presence of the jury.

A careful examination of the record discloses that this contention is without any substantial merit. The statement of the court did not amount to a reprimand.

Defendant finally complains that the court erred in admitting as rebuttal testimony that which was properly testimony in chief.

The record discloses that the rebuttal evidence was proper by reason of the insinuations and testimony injected into this case by the defendant himself. He introduced the witness Oma Chance, whose testimony indicated an intimacy between Mrs. Jackson and the deceased. Having introduced the issue, he cannot complain that the state offered evidence to rebut any ill effect this evidence might have upon the jury.

Defendant also complains of the testimony of Boyd Teel, Bertha Essery, C. E. Walker, C. W. Trotter, and Fred Hunt. All of this evidence was proper on rebuttal.

While the errors complained of by the defendant are numerous and are ably presented in the brief of counsel, none of them are of sufficient importance to require a reversal of the case.

In cases of this character, hotly contested, more or less minor error creeps into the record. We have carefully examined the record and the briefs of counsel and are of the opinion that the defendant had a fair trial and is undoubtedly guilty as found by the jury.

For the reasons stated, the cause is affirmed.

DAVENPORT, P. J., and EDWARDS, J., concur.