JOHN NEELD v. STATE.

No. A-8612.   Feb. 16, 1934.
(30 Pac. [2d] 193.)

Paul D. Sullivan, for plaintiff in error.

J. Berry King, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

DAVENPORT, J.   The plaintiff in error, hereinafter for convenience referred to as defendant, was by information charged with murder, was tried and convicted of manslaughter in the first degree and sentenced to imprisonment in the state penitentiary for four years, and appeals.

The testimony in substance is that Buster Neeld, a brother of the defendant, and Cecil Davidson met in the town of Comanche on the 7th day of November, 1931, and became involved in a quarrel, and after some argument and discussion agreed to go outside of the corporate limits and

fight; they went about a mile east of Comanche and began fighting before they got out of the car, Cecil using a knife on Buster Neeld. A number of parties followed them out, including Ed and John Neeld, John being sometimes called Shi; the father of the Neeld boys also went out to where the fight was going on. Several parties engaged in the fight. Several of the witnesses testify to seeing Cecil Davidson have a knife, and also to seeing the defendant, John Neeld, have a knife. The difficulty was what would be considered a family row, the Neeld boys and their father being on one side, and the Davidson boys and their relatives on the other.

The following questions were propounded to Blaine Lowery and he gave the following answers:

"Q.  About how far west of Ben Davidson and Buster Neeld was George Abshire and Ed Neeld fighting?  A.  I figure around eight or ten feet.  Q.  Eight or ten feet? A. Yes, sir.  Q.  All right, then what occurred?  A.  George and Buster got in a fight there, then this Bill Lawson ran up.  There was about four in a fight there at the same time.  Q.  Did you see any weapon being used by them? A.  Car crank.  Q.  Who had the car crank?  A.  Ed Neeld had the car crank to start with.  Q.  Ed Neeld, the brother of the defendant, John Neeld?  A.  Yes, sir. Q.  That is what I am getting at.  You say you saw the Lawson boy come in there about that time.  Who was the Lawson boy having a fight with?  A.  Shi Neeld over there.  Q.  Shi Neeld is the same person as John Neeld? A. Yes, sir. Q. Did you see John Neeld and Lawson in a difficulty there?  A.  Yes, sir.  Q.  Where was that with reference to where Ben Davidson and Buster Neeld was? A.  That was on west.  I figure that was about two or three feet below George and Ed Neeld.  Q.  They were engaged in a difficulty on the extreme west of all the fighting?  A.  Yes, sir.  Q.  Did you hear the Lawson boy say anything? A.  I seen him duck out of there and run to

his car in a few minutes. I did not learn he was cut until I got back to town."

George Abshire, a witness, testified on behalf of the state that—

"Another one of the Neeld boys jumped on to me. I suppose he was a Neeld boy. While they were after me, Bud Lawson run up and took one off my hands. Bud Lawson and Bill Lawson are one and the same party. He run up and took the one I could not identify off my hands. I turned to see what the other was doing and he was standing up on a high embankment when I turned. While I was standing there Bill Lawson ran up and touched me and says: 'Take me to town, I am cut.' When I had seen him the last time he had taken one off my hands."

Other witnesses testify to seeing the defendant there engaged in the difficulty. No one testified positively that they saw the defendant strike the deceased, Bud, or Bill Lawson, with his knife, but they do testify seeing him with a knife, and seeing him engaged in the fight, and immediately thereafter Lawson called to his friend to take him to town, telling him he had been cut.

The defendant denies he cut deceased, but admits he was in the difficulty and pulled some one off of his father, and that in the difficulty he was cut on the finger or hand. This is in substance the testimony.

The defendant filed twenty-two assignments of error, but in his brief has argued only three of them. The insufficiency of the evidence to warrant a conviction; that the court erred in instructing the jury on manslaughter in the first degree; that the court erred in refusing to admit proper, competent, material, and relevant evidence in said cause.

The evidence that the defendant urges should have been admitted is evidence of Mrs. S. S. Bradshaw a nurse

in the hospital where the deceased was treated up to his death, that during the time he was in the hospital he told Mrs. Bradshaw he did not know who cut him. The defendant on cross-examination showed by Dr. R. W. Richardson that in a conversation he had with the deceased he told him he did not know who had cut him, but did not say that the defendant did not cut him. The court did not err in refusing to admit the testimony of Mrs. Bradshaw.

The only question argued by the defendant that is necessary to consider is the question of the insufficiency of the evidence. The record discloses there had been a former trial in this case, and at that time the court had refused to instruct upon the question of manslaughter in the first degree. At this trial the court instructed upon manslaughter in the first degree, with the result the jury found a verdict of guilty and sentenced the defendant to imprisonment in the state penitentiary for a term of four years.

This court from its organization up to the present time has held that it is the duty of the court to instruct on all theories of the case, that in a murder prosecution it is the duty of the court to submit the law on each degree which the evidence tends to prove. In this case the testimony of the state is clear and positive that the defendant was engaged in a part of the difficulty; that he was seen with a knife in his hand during the difficulty, and later with blood on his hand. The defendant denies he cut the deceased, but admitted he went to the rescue of his father and pulled one of the men off of him. This raises a conflict in the testimony, and this court, in a long line of cases, has repeatedly held that, where there is any competent testimony, though conflicting, to sustain a verdict

of guilty, it would not disturb the verdict. There is sufficient evidence in this case to sustain the verdict of the jury and judgment of the court.

After considering the record in this case, we hold that the defendant was very fortunate in securing as light' a sentence as was imposed upon him by the jury. In Lawson v. Territory, 8 Okla. 1, 56 Pac. 698, the Territorial Supreme Court held:

"All questions of fact, in a criminal prosecution, are to be determined by the jury, and the court cannot express an opinion as to the weight of evidence, except to direct a verdict of not guilty, and even then it must advise the jury that they may disregard such instruction and return a verdict of guilty; and it is error for a trial court, in a prosecution for murder, when the homicide was committed while the parties were having a personal difficulty, and there was some evidence tending to show that the deceased was the aggressor, to instruct the jury that 'in this case there is no evidence to support or justify a verdict of manslaughter in the first degree, manslaughter in the second degree, or justifiable homicide,' and to further instruct them, as a matter of law, that their verdict should be guilty of murder, as charged in the indictment, or that such killing amounted in law to justifiable homicide, and that the defendant is not guilty. It is for the jury to say as to whether or not the defendant committed the homicide, and then it becomes their further duty to determine from the evidence, under the instructions of the court, of what particular crime, included in the indictment for murder, he is guilty."

Under the Oklahoma statute (O. S. 1931, § 3062), in a trial on an indictment, questions of law are to be decided by the court, and the questions of fact are to be decided by the jury, and, although the jury have the power to find a general verdict which includes the question of law as

well as the facts, they are bound nevertheless to receive the law as laid down by the court.

In Williams v. State, 12 Okla. Cr. 39, 151 Pac. 900, this court confirmed prior rulings that in a prosecution for murder it is the duty of the trial court to determine whether or not there is any evidence which tends to prove the different degrees, and, when the court has so determined there is some evidence tending to prove different degrees, then the law of each degree which the evidence tends to prove should be submitted to the jury, and this ruling has been followed by this court, in the following cases: Steeley v. State, 17 Okla. Cr. 252, 187 Pac. 821; Lytton v. State, 12 Okla. Cr. 204, 153 Pac. 620; Irby v. State, 18 Okla. Cr. 671, 197 Pac. 526; Inman v. State, 22 Okla. Cr. 161, 210 Pac. 742; Willis v. State, 25 Okla. Cr. 259, 220 Pac. 72; Stanley v. State, 28 Okla. Cr. 135, 229 Pac. 657.

In Keltner v. State, 52 Okla. Cr. 150, 3 Pac. (2d) 451, this court held:

"In a prosecution for murder, when the court submits that issue, and the jury finds the defendant guilty of manslaughter in the first degree, in a case where the law and the facts make the crime murder, it is an error in the defendant's favor, of which he has no cause to complain."

After a careful study of the record, we hold that the defendant was accorded a fair and impartial trial; that no fair-minded jury could have arrived at any other verdict than one of guilty. The punishment imposed upon the defendant is reasonable. There are no errors in the record to warrant a reversal. The judgment is affirmed.

EDWARDS, P. J., and CHAPPELL, J., concur.